Thomas C. Frost, Esq. (185187)
Jonathan Stein, Esq. (123894)
Georg M. Capielo, Esq. (245491)
THE FROST FIRM
301 Santa Fe Drive
Encinitas, CA 92024
Telephone: (619)822-1740
Facsimile: (619)822-1744
Emails: tfrost@thefrostfirm.com
         jstein@thefrostfirm.com
         gcapielo@thefrostfirm.com
*Attorneys for Plaintiff AK Futures LLC and Counter-defendant WM Wholesale*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| AK FUTURES LLC,<br><br>Judgment and Permanent Injunction Creditor,<br>v.<br><br>SMOKE TOKES LLC<br><br>Judgment and Permanent Injunction Debtor. | **Case No. 8:21-cv-01061-JVS-ADS**<br>Related Cases:<br>8:21-cv-1027-JVS- ADS<br>8:21-cv-1028-JVS-ADS<br>8:21-cv-01154-JVS-ADS<br>8:21-cv-02121-JVS-ADS<br><br>**JUDGMENT CREDITOR AK FUTURES LLC'S MOTION FOR POST JUDGMENT ATTORNEYS' FEES AND THIRD-PARTY COSTS THROUGH JAN 31, 2023**<br><br>**Hearing Date: April 3, 2022**<br>**Hearing Time: 1:30 pm**<br>**Courtroom: 10C**<br>**Judge:   The Hon. James V. Selna** |

# TABLE OF CONTENTS

**I. INTRODUCTION: RELEVANT PROCEDURAL HISTORY AND JANUARY 23, 2023, COURT ORDER [DKT. 65]**..............................................4

    **A.** The Judgment and Permanent Injunction Was A Default Judgment That Awarded Prejudgment Attorneys' Fees............................................................5

    **B.** This Attorneys' Fees Motion seeks fees through January 31, 2023. AKF intends to seek its subsequent attorneys' fees and third-party costs for enforcing the Judgment and Permanent Injunction [Dkt 26] in a later motion. Request For Attorneys' Fees Is Not A "Gross Overreach to Enrich Counsel." ..............................5

    **C.** Why Attorneys' Fees and Third-Party Costs Are So High. ...............................6

    **D.** The December 9, 2022, Enforcement Action..................................................8

    **E.** Other Relevant Procedural History ................................................................9

**II. LEGAL STANDARDS SET FORTH IN JANUARY 23 ORDER AND MOTHERSHIP ATTORNEYS FEES ORDER.** ..................................................11

    **A.** The Court Has Determined That Post-Judgment Attorneys' Fees May Be Recovered in Accordance With FRCP Rule 54(D)(2). ...............................11

    **B.** Lodestar Analysis. ...........................................................................................12

    **C.** Hourly Rates. ...................................................................................................13

    **D.** Expended Hours. .............................................................................................14

    **E.** Apportionment Unnecessary Here. .................................................................15

    **F.** Lodestar Analysis Results and Adjustments For Post Judgment Proceedings. 15

    **G.** Third Party Costs. ............................................................................................16

    **M.** Levying Officers' Fees ...................................................................................17

    **N.** Grand Total .....................................................................................................17

**III. CONCLUSION**..............................................................................................17

# TABLE OF AUTHORITIES

### CASES

*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)..........................................................12

*Fischel v. Equitable Life Assurance Soc'y,* 307 F.3d 997, 1007 n.7 (9th Cir. 2001)..15

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).........................................................11

*Ketchum v. Moses*, 17 F.3d 735, 743 (Cal. 2001).........................................................11

*Mattel, Inc. v. MGA Ent., Inc.,* No. 04-9049, 2011 WL 3420603, at *9 (C.D. Cal. Aug. 4, 2011) .................................................................................................................14

*Sayta v. Martin*, No. 16-cv-03775, 2022 U.S. Dist. LEXIS 16357, at *13 (N.D. Cal. Jan. 28, 2022)..........................................................................................................11

*Serrano v. Priest*, 569 F.2d 1303, 1316 (Cal. 1977).....................................................11

*Traditional Cat Ass'n v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003).......................14

*Van Gerwen v. Guarantee Mut. Life Co.,* 214 F.3d 1041, 1045 (9th Cir. 2000) ........13

*Wb Music Corp. v. Royce Int'l Broad. Corp.,* No. 16-600, 2021 U.S. Dist. LEXIS 193603, at *7 (C.D. Cal. May 7, 2021) ..................................................................15

### STATUTES

Code Civ. Proc. §§697.710-697.750 ................................................................................9

Code Civ. Proc., § 685.070(c) .........................................................................................10

Code Civ. Proc., § 685.070(e) .........................................................................................10

Federal Rule of Civil Procedure 54(d)(2).......................................................................10

I.  **INTRODUCTION: RELEVANT PROCEDURAL HISTORY AND JANUARY 23, 2023, COURT ORDER [DKT. 65]**

*A.   The Judgment and Permanent Injunction Was A Default Judgment That Awarded Prejudgment Attorneys' Fees.*

This Court entered the "**Judgment and Permanent Injunction**" on December 8, 2021*[Dkt 26]* against Smoke Tokes, LLC ("**Smoke Tokes**") and "**Related Persons**," Raheel Lakhany, Shafaq Sattar a/k/a Jumani Lakhani, and Amin Habibullah.

The Judgment and Permanent Injunction was a default judgment that includes (i) a monetary award for $244,152.40 against Smoke Tokes, which includes an award of attorney's fees of $92,656; and (ii) a permanent injunction against Smoke Tokes and Related Persons. *[Dkt 26 at ¶¶B and C]*.

The permanent injunction prohibits the sale of counterfeits or trafficking in unauthorized distribution of Cake™ branded products. It also required destruction of counterfeits and accountings, neither of which were done by Smoke Tokes. *Judgment and Permanent Injunction [Dkt 26 at ¶¶E, F and G]*.

*B.   This Attorneys' Fees Motion seeks fees through January 31, 2023. AKF intends to seek its subsequent attorneys' fees and third-party costs for enforcing the Judgment and Permanent Injunction [Dkt 26] in a later motion. Request For Attorneys' Fees Is Not A "Gross Overreach to Enrich Counsel."*

Smoke Tokes protested that, "AK Futures' attempt to collect attorneys' fees nearly triple the amount of the Judgment and Permanent Injunction without any purported evidentiary basis [is] a gross overreach, suggesting to this Court that AK Futures (but particularly its counsel) [see] this as a windfall opportunity to enrich itself." *Order Regarding Order to Show Cause [Dkt 65]* (the **"January 23 Order"**)*, at p.9*.

Explained below is Plaintiff AK Futures' request under FRCP Rule 54(d)(2) for the "lodestar" amount of $443,513.50 in post judgment attorneys' fees to this date. A related request is made for post judgment third party costs in the amount of $58,953.97,

4

JUDGMENT CREDITOR AK FUTURES LLC'S MOTION FOR POST JUDGMENT ATTORNEYS' FEES AND THIRD-PARTY COSTS THROUGH JAN 31, 2023   CASE NO: 8:21–cv–01061–JVS–ADS

and $4,290.00 in US Marshals' Fees. Thus, a post judgment amount of $506,757.47 is sought for work through January 31, 2023.

Accompanying this "**Attorneys' Fees Motion**" is the Frost Declaration explaining the "lodestar" amount of post judgment attorney's fees as well as third party costs. The Frost Declaration is modeled on the successful *Declaration of Benjamin J. Fox In Support Of Request For Award Of Attorneys' Fees In The Amount Of $92,656.45 [Dkt 24]*. The *Judgment and Permanent Injunction Smoke Tokes [Dkt 26]* granted Judgment Creditor AK Futures' request for **prejudgment** attorneys' fees in the amount of $92,656, as part of its default judgment. *Id.* at ¶C.

### C.   Why Attorneys' Fees and Third-Party Costs Are So High.

"The Court agrees with Smoke Tokes that it is 'difficult to fathom' how AK Futures' enforcement collection efforts have amounted to $381,000, given the little activity following the entry of Judgment and Permanent Injunction a year ago." *January 23 Order*, at p.8.

In answer to the Court's skepticism, the *Judgment and Permanent Injunction [Dkt 26]* includes a permanent injunction against serial counterfeiters that remained undeterred by entry of the Judgment and Permanent Injunction. Plaintiff AK Futures' (AKF's) CEO, Mr. James Clelland submits his declaration that the underlying lawsuit and post judgment proceedings (the "**Post-Judgment Enforcement**") are not focused on collecting the $244,152.40 monetary judgment. Rather, these proceedings are focused on stopping serial counterfeiters from continuing their proven, ongoing, unauthorized distribution of Cake™ branded products in contempt of this Court's Orders. *Clelland Decla at* ¶¶ *3-6*.

For example, Smoke Tokes continually has marketed sold and distributed its counterfeit "Cake ™ branded Seahorse Lookah" device, which AKF mentioned in its original Complaint in the Smoke Tokes lawsuit. Six month after the Judgment and Permanent Injunction was entered in December 2021, IC Investigators purchased a

counterfeit Cake Seahorse Lookah device at the Smoke Tokes Superstore in July 2022, along with other counterfeit and unauthorized Cake branded products. *Frost Decla at ¶40; Clelland Decla at ¶¶5-6; Ex. 1*.

The "little activity" referred to above is a fiction perpetrated by opposing counsel. There has been a great deal of activity, hidden from immediate discovery. The activities include:

(i) Review of the Judgment and Permanent Injunction, and related analysis regarding collectability and enforcement of the Injunction's prohibitions against Smoke Tokes and Related Persons.

(ii) Repeated private investigations between January 2022 and July 2022, which ultimately led to the discovery of Judgment Debtor's new Smoke Tokes Superstore in Los Angeles. Uncontroverted evidence now shows that Judgment Debtor and its principals have engaged in ongoing, continual and concerted violations of the Court's Permanent Injunction.

(iii) Further factual investigations and legal analysis regarding available enforcement remedies.

(iv) Legal work towards an application for order to show cause re contempt, which will request substantial civil penalties against contemnors. The upcoming "**April 3 Application For OSC re Contempt**" will be filed for hearing on the same date as this Attorneys' Fees Motion.

(v) Legal work towards the successful *Ex Parte Application for Enforcement Order [Dkts. 35 through 35-19]*.

(vi) Legal work necessary to ensure the success of the Enforcement Action, which required 10 US Marshals, two Substitute Custodians, and a team of 20 trained Plaintiff's representatives, including an appraiser with expertise in smoke shop valuations and court-ordered liquidations.

(vii) "Mirror imagining" a large number of computers, tablets, server and a cellphone taken in the Enforcement Action.

(viii)   The abundant work necessary to overcome Judgment Debtor's aggressive opposition, which focused more on discrediting Judgment Creditor and its counsel than showing facts that no counterfeiting had occurred. *Frost Decla at ¶3*.

*(*ix*)* Judgment Debtor's wrongful "bait and switch" tactic (described below) which derailed AKF's levy and lead to more legal work.

The post judgment attorneys' fees and third-party costs were incurred without any contingency fee agreement and are not a "windfall opportunity to enrich" Plaintiff's counsel.  According to Declarations of CEO Clelland and attorney Frost, The Frost Firm gets paid its hourly rates in full on all matters, including this one. The Frost Firm has been overloaded with legal work for a solid year and has a backlog of approximately one more year of legal work in the Central District and other federal districts, no matter what the financial results are here. *Clelland Decla at ¶4; Frost Decla at ¶4*.

### D.   The December 9, 2022, Enforcement Action

Judgment Debtor got lucky. The U.S. Marshals' "**Enforcement Action**" on December 9, 2022, captured only a small number of counterfeit and unauthorized goods in inventory that day.  However, repeated investigative reports indicated a much larger role in counterfeiting and trafficking in unauthorized distribution of Cake ™ branded products for the year *after* the Judgment and Permanent Injunction was entered on December 8, 2021. *[Dkt 26]. Exhibit 1 Investigative Invoicing; Ex Parte Application for Enforcement Order, [Dkt 35]*.

As shown in the *Frost Declaration*, a significant portion of the post-Judgment legal fees billed to AKF were and are aimed at obtaining a contempt order against (i) Smoke Tokes, LLC; (ii) Related Persons Raheel Lakhany, Shafaq Sattar a/k/a Jumani Lakhani, and Amin Habibullah; and (iii) Smoke Tokes' successor-in-interest, ST & Company, LLC.  The meet and confer Email Chain for the April 3 Application For OSC re Contempt is attached as *Exhibit 5*.  *Frost Decla at ¶¶ 6, 17-24*.

### E. Other Relevant Procedural History

On July 14, 2022, this Court issued the "**Writ of Execution**" *[Dkt 34]* for the Judgment amount.

On November 16, 2022, this Court issued the *Order Enforcing Judgment and Permanent Injunction. [Dkt 36]* (the "**Enforcement Order**"). The Enforcement Order required the US Marshals Service (the "**Marshals**") to levy on personal property at the Smoke Tokes Superstore, by requiring <u>both</u> seizure of counterfeit items as well as levy on personal business property that might be sold to satisfy the Judgment amount. *[Dkt 36 at 2:1-26]*.

On December 9, 2022, approximately 10 US Marshals and 20 trained representatives of Judgment Creditor took control of the Smoke Tokes Superstore, seized counterfeit goods, cash and inventory, and "mirror imaged" business records (the "**December 9 Enforcement Action**").

In the December 9 Enforcement Action, the Marshals and the Substitute Custodian filled four large moving trucks with inventory. AKF planned to cause the Marshals and Substitute Custodian to sell the inventory to cover the Judgment amount, post judgment attorneys' fees, and third-party costs. *Frost Decla at ¶33*. Towards this end, AKF filed a Memorandum of Costs with the Court on December 7, 2023, two days before the Enforcement Action. *[Dkt. 40.]*

***The Marshal's levy followed the exact requirements of the Enforcement Order [Dkt 36]. Plaintiff's plan was that, while the Marshals held the inventory for later sale, a new Writ of Execution could be issued that included all post judgment attorneys' fees and third party costs and Judgment Debtor could bring any legal challenges. In other words, because the sale of levied business personal property would take time, all procedural matters could be addressed.*** *Frost Decla at ¶31*.

Throughout the US Marshals' execution of the Court's Enforcement Order on December 9, 2022, Judgment Debtor's counsel, William Kroger, pleaded on behalf of Judgment Debtor for AKF to stop the levy. Initially, Mr. Kroger claimed Smoke Tokes

8

JUDGMENT CREDITOR AK FUTURES LLC'S MOTION FOR POST JUDGMENT ATTORNEYS' FEES AND THIRD-PARTY COSTS THROUGH JAN 31, 2023   CASE NO: 8:21−cv−01061−JVS−ADS

did not own the assets levied upon, but he worked cooperatively with AKF's counsel to resolve the matter. *Frost Decla at ¶32.*

Then Mr. Kroger successfully negotiated for AKF to stop the levy **_and_** for AKF's trained representatives to return the substantial sums of inventory and cash already in the possession of US Marshals. The parties entered their negotiated agreement to resolve the levy at 3pm, six hours after the execution commenced.[1] By that time, ten US Marshals had in their possession four large trucking containers filled with Judgment Debtor's inventory, cash and other non-exempt business assets (the "**Seized Assets**").[2]

Consistent with the parties' agreement, Judgment Debtor delivered to the US Marshals a Certified Check for $658,738 (which included the Memo of Costs amount *[Dkt. 40.]*); and in exchange, AKF agreed to return possession of all Seized Assets, free and clear of AKF's execution liens, to suitable locations within Judgment Debtor's warehouse). The Marshals then deposited and held the funds in the account of the US Marshals (the "**Deposited Funds**"). *Frost Decla at ¶34.*

Several days after the December 9 execution and levy, Judgment Debtor engaged new counsel. On December 19, 2022, Judgment Debtor failed to timely file its objections or motion to tax AKF's Memorandum of Costs and thereby waived its statutory right to challenge the costs and fees claimed therein.[3] On January 17, 2023,

---

[1] Counsel also exchanged calls and emails memorializing the prospective resolution, in principle.

[2] "A levy on property under a writ of execution creates an execution lien on the property from the time of levy until the expiration of two years after the date of issuance of the writ unless the judgment is sooner satisfied." CCP §§697.710-697.750.

[3] The Judicial Council's form MC-12 Post-Judgment Memorandum, which AKF filed with the Court and US Marshals served on Judgment Debtor (on December 9, 2022), expressly provides:
   "[F]ees sought under this memorandum may be disallowed by the court upon a motion to tax *filed by the debtor*, notwithstanding the fees

the Court Clerk issued a new Writ of Execution for $634,993.98 in accordance with CCP §700.050.

New counsel then pulled a "bait and switch". Judgment Debtor reneged on the parties' negotiated resolution, and misrepresented to this Court that it never entered any such agreement. New counsel for Judgment Debtor falsely accused AKF's counsel of ethical improprieties and contempt of this *Court's Enforcement Order*, which AKF worked so hard to obtain. *Frost Decla at ¶36.*

Ultimately, the Court vacated the new Writ of Execution and instructed the Marshals to accept Judgment Creditor's levy on the original Writ amount of $244,152.40 and return the balance to Judgment Debtor. Plaintiff dutifully informed the Marshals of the Court's Order. *Frost Decla at ¶37.*

Judgment Debtor continued to vigorously contest the Enforcement Order throughout January 2023, so AKF incurred an additional 120 hours of attorney time, in addition to substantial third-party costs and 10 US Marshals' fees. *Frost Decla at ¶38.*

## II.   LEGAL STANDARDS SET FORTH IN JANUARY 23 ORDER AND MOTHERSHIP ATTORNEYS FEES ORDER.

### A.   *The Court Has Determined That Post-Judgment Attorneys' Fees May Be Recovered in Accordance With FRCP Rule 54(D)(2).*

According to its *January 23 Order [Dkt 65],* this Court has determined that Plaintiff may seek post judgment attorneys' fees as a "matter of right," but only "in accordance with Federal Rule of Civil Procedure 54(d)(2)." *Id at pp.6-8*. The Court then explained:

---

having been included in the writ of execution. (Code Civ. Proc., § 685.070(e).) A motion to tax costs claimed in this memorandum must be filed within 10 days after service of the memorandum. (Code Civ. Proc., § 685.070(c).)" *[Dkt. 40.]*

Case 8:21-cv-01061-JVS-ADS   Document 74   Filed 02/08/23   Page 11 of 17   Page ID #:1003

> To recover attorneys' fees under section 505 and 685.040, the fees must have been reasonably and necessarily incurred to enforce the judgment. *See Sayta v. Martin*, No. 16-cv-03775, 2022 U.S. Dist. LEXIS 16357, at *13 (N.D. Cal. Jan. 28, 2022).… In any case, if AK Futures wishes to pursue attorneys' fees and costs that have been reasonably and necessarily incurred after December 8, 2021 on this matter, it should provide information regarding the hours expended in enforcing the Judgment and Permanent Injunction; what work was performed; by whom it was performed; the attorneys' hourly rates and experiences; or the prevailing market rate for comparable experience and work. Likewise, similar information should be provided to account for these "third-party costs." *January 23 Order [Dkt 65 at p.8]*.

**B.     Lodestar Analysis.**

Separately but helpful here, this Court also articulated the legal standard for awarding 'lodestar" attorneys' fees and costs in the related case, *AK Futures v. LCF Labs, et al,* Case No. 8:21-cv-02121, in its *Order Regarding Mothership Technologies, Inc.'s Motion for Attorneys' Fees and Cost [Dkt 232* (the "**Mothership Attorneys Fees Order**"):

> To determine the 'reasonableness' of fees, courts apply a "lodestar" analysis, which evaluates the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see Ketchum v. Moses*, 17 F.3d 735, 743 (Cal. 2001). "[A] court assessing attorney fees begins with a touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case.'" *Ketchum*, 17 F.3d at 741 (*quoting Serrano v. Priest*, 569 F.2d 1303, 1316 (Cal. 1977)). In determining reasonable compensation, courts "must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Id.* at 741. "The lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court" based on a variety of factors. *Id.*

11
JUDGMENT CREDITOR AK FUTURES LLC'S MOTION FOR POST JUDGMENT ATTORNEYS' FEES AND THIRD-PARTY COSTS THROUGH JAN 31, 2023   CASE NO: 8:21−cv−01061−JVS−ADS

The lodestar analysis appears to apply to post judgment attorneys' fees and third party costs under Rule 54(d) and is adopted here.

### C.     Hourly Rates.

"The moving party bears the burden of producing evidence showing that the hourly rates are in line with 'those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).". *Mothership Attorneys Fees Order, at p.5.*

As evidence of hourly rates prevailing in the community, the table below shows the hourly rates charged by the preeminent law firm of Morrison & Foerster LLP for its prejudgment activities – charged in this same case and to this same client – which the Court awarded as reasonable ***prejudgment*** attorneys' fees and costs, based on *Declaration of Benjamin Fox in Support of Request For Award Of Attorneys' Fees [Dkt. 24]; Frost Decla at ¶38.*

The *Frost Declaration* lays out a short curriculum vitae of each billing attorney involved in post judgment activities. *Frost Decla at ¶9-13*. The Frost Declaration used as a template the Ben Fox Declaration above.

The comparable hourly rates for The Frost Firm for its post judgment activities in the same case and for the same client are listed side-by-side. On average, The Frost Firm's rates are significantly lower than the comparable Morrison & Foerster hourly rates. *Frost Decla at ¶39*

| Morrison & Foerster Attorneys | | The Frost Firm Attorneys | |
|---|---|---|---|
| Lead Partner Benjamin Fox | $1,137 | Managing Partner Thomas Frost | $725 |
| Partner Joyce Liou | $962.50 | Senior Trial Attorney Jonathan Stein | $625 |
| Senior Associate | $809.38 | Senior Associate | $500 |

12

JUDGMENT CREDITOR AK FUTURES LLC'S MOTION FOR POST JUDGMENT ATTORNEYS' FEES AND THIRD-PARTY COSTS THROUGH JAN 31, 2023   CASE NO: 8:21-cv-01061-JVS-ADS

| Eoin Connolly | | Georg Capielo | |
|---|---|---|---|
| Paralegal | $393.75. | Paralegals | $195 |

Morrison & Foerster's higher hourly fees are merited by its excellent work and in-depth expertise. Nevertheless, The Frost Firm has worked as co-counsel with Morrison & Foerster on other litigation matters in the Central District, including *Cookies v AK Futures,* Case No. 8:21-cv-01154, which the parties successfully dismissed at an early stage. In addition, The Frost Firm also points to its own record of success including the following:

- Judgment and permanent injunction successfully entered in *AK Futures v Boyd Street, Case No. 8:21-cv-01027,* on a res judicata basis. *[Dkt 59-1].*

- Judgment and permanent injunction successfully entered in *AK Futures v Limitless Trading, Case No. Case No. 8:21-cv-01154,* on a res judicata basis. *[Dkt 59].*

- Preliminary injunction successfully entered by local counsel in Judgment and permanent injunction successfully entered in *AK Futures v. 7636 Harwin, LLC et al.*, in the U.S. District Court for the Southern District of Texas Case No. 4:21-cv-02635.

The Frost Firm's track record demonstrates it performed reasonable work required to achieve results consistent with AKF's core objectives - to prevent counterfeiters from counterfeiting, particularly defendants such as Smoke Tokes.

### D. **Expended Hours.**

"The hours expended on the litigation must be 'reasonably expended,' and not 'excessive, redundant, or otherwise unnecessary'. *Van Gerwen v. Guarantee Mut. Life Co.,* 214 F.3d 1041, 1045 (9th Cir. 2000)." *Mothership Attorneys Fees Order at p.6.*

The Frost Firm's time expended at its normal hourly rates, set forth above, describes the tasks reasonably necessary for enforcing the Judgment and Permanent

Injunction against serial counterfeiters and traffickers in the unauthorized distribution of Cake ™ branded products. The Frost Firm's fees regularly billed to and paid by AKF equal $443,513.50 and are summarized in the "Summary Total" spreadsheet attached as Exhibit 6. *Frost Decla at ¶29.*

### E. Apportionment Unnecessary Here.

"Furthermore, an apportionment of fees distinguishing the hours expended defending itself against the Copyright Act versus the Lanham Act is unnecessary. A prevailing party is entitled to recover fees incurred against claims that involve a 'common core of facts' or were based on 'related legal theories'. *Traditional Cat Ass'n v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003); *see, e.g., Mattel, Inc. v. MGA Ent., Inc.,* No. 04-9049, 2011 WL 3420603, at *9 (C.D. Cal. Aug. 4, 2011), *aff'd*, 705 F.3d 1108 (9th Cir. 2013). AK Futures' claims against Mothership arose out of a common core of facts: that Mothership shipped or caused to be shipped products that improperly bore the "Cake" design logo." *Mothership Attorneys' Fees Order at pp.6-7.*

Likewise, a "common core of facts" underlies all the expended hours of the post judgment enforcement of the provisions of the *Judgment and Permanent Injunction* [Dkt 26].

### F. Lodestar Analysis Results and Adjustments For Post Judgment Proceedings.

"To calculate the 'lodestar,' the court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). The court may raise or lower the lodestar based on several factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the

circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Fischel v. Equitable Life Assurance Soc'y,* 307 F.3d 997, 1007 n.7 (9th Cir. 2001). The Court should be cautious not to adjust the lodestar figure based on any of the foregoing factors that are subsumed into the original lodestar calculation. *Morales v. City of San Rafael,* 96 F.3d 359, 364, 364 n.9 (9th Cir. 1996)." *Mothership Attorneys' Fees Order* at p.7.

In this case, the expended hours times the applicable hourly rates total $443,513.50. This amount should be subject to adjustment as will be set forth in the Reply.

### G. Third Party Costs.

The January 23 Order directs Judgment Creditor to provide a description of third-party costs.

> The Copyright Act allows recovery of reasonable attorney's fees to a prevailing party as part of the costs. Id. Section 505 of the Copyright Act "governs the 'extent' to which Section 685.040 applies." *Wb Music Corp. v. Royce Int'l Broad. Corp.,* No. 16-600, 2021 U.S. Dist. LEXIS 193603, at *7 (C.D. Cal. May 7, 2021). Other Ninth Circuit district courts have awarded post judgment costs and fees in copyright actions. *Id*. (collecting cases). **** [Judgment Creditor AK Futures] should provide information regarding the hours expended in enforcing the judgment; what work was performed; by whom it was performed; the attorneys' hourly rates and experiences; or the prevailing market rate for comparable experience and work. Likewise, similar information should be provided to account for these "third-party costs.

*[Dkt 65 at pp.7-8].* Post judgment third party costs are described in the *Frost*

*Declaration at ¶¶ 41-46* and are summarized as follows:

| Post Judgment Third Party Costs | Amount |
|---|---|
| Investigative Consultants | $22,572.48 |
| R.L. Spear Co, Inc. | $1,000 |
| Consilio | $35,381.49 |
| **Total Third-Party Costs:** | **$58,953.97** |

*Frost Decla at ¶46.*

### M. Levying Officers' Fees

AKF also is entitled to recover the US Marshals fees and costs AKF paid for the six-hour levy by 10 US Marshals.[4] The US Marshals fees and costs totaled **$4,290**. Frost Decla ¶ 47, Ex. 4.

### N. Grand Total

The total amount of attorneys' fees and Third-Party Costs requested by this Motion, therefore, is amount of $506,757.47 [$443,513.50 in post judgment attorneys' fees + $58,953.97 in post judgment third party costs + $4,290.00 in US Marshals' Fees = $506,757.47]. Thus, a post judgment amount of $506,757.47 is sought.

Further description, if necessary, will be provided in the Reply.

## III. CONCLUSION

This Court is respectfully requested to sign the Proposed Order submitted herewith, and Award AK Futures the sum of **$506,757.47** as its reasonable attorneys'

---

[4] Additionally, two Marshals stayed with Judgment Debtor's representatives at Smoke Tokes until 10:30 pm, while Consilio wrapped up its imaging work for the day.

fees and costs incurred to enforce its Judgment and Permanent Injunction against the recalcitrant Judgment Debtor through January 31, 2023.

Respectfully Submitted by,

THE FROST FIRM
THOMAS C. FROST
JONATHAN STEIN
GEORG M. CAPIELO

DATED: February 8, 2023

       /s/ Thomas C. Frost
       THOMAS C. FROST

301 Santa Fe Drive
Encinitas, CA 92024
Telephone: 619-822-1740
Facsimile: 619-822-1741
Email: tfrost@thefrostfirm.com
*Attorneys for Judgment and Permanent Injunction Creditor AK Futures LLC*

17

JUDGMENT CREDITOR AK FUTURES LLC'S MOTION FOR POST JUDGMENT ATTORNEYS' FEES AND THIRD-PARTY COSTS THROUGH JAN 31, 2023   CASE NO: 8:21-cv-01061-JVS-ADS