# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AK FUTURES LLC,<br><br>    Plaintiff,<br><br>v.<br><br>SMOKE TOKES, LLC; and DOES 1-10,<br><br>    Defendants. | **Case No.: 8:21−cv−01061-JVS-ADS**<br><br>Related Cases:<br>Case No. 8:21-cv-01028-JVS-ADS<br>Case No. 8:21-cv-01027-JVS-ADS<br><br>**ORDER GRANTING PLAINTIFF AK FUTURES LLC'S EMERGENCY EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER FREEZING ASSETS AND AUTHORIZING ALTERNATIVE SERVICE OF PROCESS, AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION [114]**<br><br>Judge: Hon. James V. Selna<br>Courtroom:  10 C |

# ORDER

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Having considered Judgment Creditor AK Futures LLC's ("Futures") Ex Parte Motion For A Temporary Restraining Order Freezing Assets, For Alternative Service of Process, And For An Order to Show Cause Re Preliminary Injunction against Judgment Debtor Smoke Tokes LLC and its related persons, ST & Company LLC, Raheel Lakhany and Shahid Jumani a/k/a Shafaq Sattar (collectively, "Alleged Contemnors" or "ACs") (the "Ex Parte Motion"), the papers filed in support thereof, and any Opposition thereto, and finding good cause that the Ex Parte Motion should be granted, the Court hereby orders as follows:

IT IS HEREBY ORDERED that a temporary restraining order ("TRO") be, and hereby is, issued immediately as of August 28, 2024. ACs, and each of them, are hereby ordered to show cause why the temporary restraining order issued by this Court on August 29, 2024, should not be converted into a preliminary injunction. The hearing on the Order to Show Cause Re: Preliminary Injunction shall be set for hearing September 12, 2024, at 4:00 p.m. (the "Show Cause Hearing')

IT IS HEREBY FURTHER ORDERED Futures has demonstrated that this TRO should be properly granted *ex parte* to avoid giving ACs an opportunity to dissipate assets or destroy business records and otherwise prevent and frustrate any final equitable relief contemplated by the Court:

(a) If Plaintiff gives the alleged ACs ("ACs") notice of its Ex Parte Motion for TRO, there is a sufficient showing to support a finding that ACs are likely to transfer any ill-gotten gains away from their known entities and accounts, and otherwise hide their identities, and shield their ill-gotten assets in an effort to avoid liability and prevent Plaintiff from achieving a meaningful recovery, including an equitable accounting and disgorgement of gross proceeds of potentially contemptuous counterfeiting activities.

- 2 -
JUDGMENT CREDITOR'S MOTION FOR TRO AND PRELIMINARY INJUNCTION FREEZING ASSETS
CASE NO. 8:21-CV-1061

(b) Granting Plaintiff an ex parte TRO will also be in the public's interest. It will ensure this Court has the means of enforcing its lawful orders, and issuing equitable remedies required to bring these post-Judgment proceedings to a close.

(c) Plaintiff has requested a recovery of ACs' ill-gotten profits from their sale of unauthorized, inauthentic Cake branded products ("Counterfeit Products") in violation of this Court's orders. By requesting equitable relief, Plaintiff has invoked this Court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief. *Levi Strauss & Co.*, 51 F.3d at 987.

(d) There is a sufficient showing to support a finding ACs are likely to destroy evidence of their contempt—including payment histories and accounts with financial institutions—or hide or transfer any ill-gotten proceeds from the sale of Counterfeit Products outside of the jurisdiction of this Court, unless those assets are frozen or otherwise restrained.

In light of the foregoing,

IT IS HEREBY ORDERED that ACs, and each of them, and each of their officers, agents, servants, employees, attorneys, and any other person acting in concert or active participation with them, or any of them, having notice of this Order, are hereby ordered to temporarily:

(1) Preserve all documents and electronically stored information arising from or related to the production, sale, offering for sale, advertising or promotion, and distribution of all Cake branded products during the period August 13, 2021, through the date of this Order.

(2) All financial institutions, payment processors, banks, escrow services, money transmitters and virtual marketplaces, including but not limited to: PayPal, Inc. ("PayPal"); WeChat, Venmo; or any other companies that engage or have engaged in the processing or transfer of money of or on behalf of any ACs by virtue

of their operation of the "Smoke Tokes" business enterprise, on behalf of any ACs or any entity commonly owned by them (the "Financial Institutions"); and their related companies and affiliates who receive actual notice of this Order shall:

  (a) Immediately attach and freeze all funds in any accounts owned, controlled or utilized by, or associated with ACs, or otherwise prohibit the transfer of any funds out of any such accounts, and divert any frozen funds and any additional funds that may be transferred into the accounts into a holding account for the trust of the Court, with such frozen funds and/or holding accounts being held, maintained and/or located exclusively within the United States.

 (3) Within seven days of receiving actual notice of this Order, all Financial Institutions and their related companies and affiliates shall provide a report to Futures' counsel Thomas C. Frost, Esq., THE FROST FIRM, by email addressed to: tfrost@thefrostfirm.com, for each of the ACs having any account with the Financial Institution, the report to include, at minimum, the following:

  (a) Legal name, email address and physical address of each AC;

  (b) Current account balances and amount of funds attached, frozen and being held in trust pursuant to this Order; and

  (c) Identity of all accounts linked to or associated with each of AC's accounts, or from or to which funds have been transferred from the attached accounts, including the name of the financial institution, account numbers, routing numbers or beneficiary institutions.

 (4) No funds restrained by this Order shall be transferred or surrendered by any Financial Institution for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of the Court.

(5) Futures may notify the Financial Institutions of this Order by electronic means, including by electronic mail with delivery confirmation.

(6) This Order shall apply to all ACs, associated e-commerce storefronts and any other websites, seller identification names, e-commerce stores or Financial Institution accounts which are being used by ACs for the purpose of advertising, offering for sale and selling any products in connection with the "Smoke Tokes" business enterprise.

(7) Any ACs or Financial Institution account holder may petition the Court to modify the asset restraint set out in this Order.

(8) At the Show Cause Hearing, ACs and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same, and shall provide a reasonable estimate of their potential lost sales with supporting documentation and requested bond amount and shall appear and show cause why a preliminary injunction should not issue, at which time the Court will hear argument on Futures' requested preliminary injunction.

(9) SERVICE BY ALTERNATE MEANS: After Plaintiff's counsel has received confirmation that the Financial Institutions have restrained ACs' funds as directed herein, Plaintiff shall serve copies of the Motion for Temporary Restraining Order and this Temporary Restraining Order on each Alleged Contemnor as follows:

(a) Attached to a message sent to ACs via email to known, active, functioning email addresses only.

(b) As a download link sent to ACs through any online messaging system; or

(c) By electronic mail with delivery confirmation using email addresses provided by the Financial Institutions or ACs themselves.

(d) Otherwise, service shall be deemed good and sufficient service if made upon counsel, or alternatively each of the alleged contemnors by personally

delivering a copy of same to the alleged contemnor, or its attorney, agent, employee, spouse or immediate relative of suitable age and discretion at its respective place of business or residence.

(e)  7 This TRO expires "at the time-after entry not to exceed 14 days-that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Fed. R. Civ. P. 65(b)(2).

(10) Additionally, for the purpose of providing additional notice of this proceeding and all other pleadings, orders and documents filed herein, the owners or operators of the Financial Institutions, including related entities and/or financial institutions, payment processors, bank, escrow services and/or money transmitters, shall, at Futures' request, provide Futures' counsel with all names, physical addresses, phone numbers and electronic mail address associated with ACs.

(11) Any response or opposition to Preliminary Injunction must be filed and served on Futures' counsel by email addressed as set forth above, and filed with the Court, along with Proof of Service.  Futures shall file any reply memorandum prior to the Show Cause Hearing. The above dates may be revised upon stipulation by all parties and approval of this Court. ACs are on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d); Section 505 of the Copyright Act, et seq., Federal Rule of Civil Procedure 65, 28 U.S.C. § 1651(a) and the Court's inherent authority.

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that, in accordance with Rules 64 and 65 of the Federal Rules of Civil Procedure, the ACs and their respective officers, servants, employees and agents and any persons in active concert or participation with them, and any banks, savings and loan associations, or other financial institutions, or agencies which engage in the transfer of real property, who receive actual notice of this order by personal service or

otherwise, are temporarily restrained and enjoined from transferring, disposing of, or secreting any money, stocks, or other assets of these ACs, without prior approval of the court, except as follows:

 (1) No assets shall be transferred unless and until such time as any Contemnor wishing to transfer assets files with the court and serves upon plaintiff's counsel an accounting of all assets having a value of Five Thousand Dollars ($ 5,000) or more, and the location an identity thereof, and upon the filing of such accounting, such Contemnor may make payments for ordinary living expenses not to exceed TwoThousand Dollars ($ 2,000) per month, with an accounting of such payments to be filed with the court and provided plaintiff within ten (10) days following the end of each month;

 (2) any Contemnor may pay ordinary business expenses as follows:

  (a) rent or mortgage in the amount normally paid as required in any lease or loan on any premises by such Contemnor or company, upon presentation of said lease or loan document to plaintiff and verification thereof;

  (b) ordinary and regular salaries to any bona fide employees, other than any of the ACs themselves, or any relatives or dependents thereof, to the extent that such salaries are not excessive; provided, however, that such salaries shall be paid to persons on the payroll of such Contemnor as of the 1st of August, 2024, and such salaries do not exceed the prior month's level and further provided that Contemnor shall first present to plaintiff's counsel written documentation identifying and verifying all individuals proposed to be paid and the particulars of the salaries proposed therefor;

  (c) ordinary and necessary bills for utilities;

  (d) payments of any amounts less than one thousand dollars not to exceed an aggregate of more than  per month, for ordinary business expenses, which

transfers shall be documented, and such Contemnor shall provide plaintiff's counsel with evidence thereof within ten (10) days following the end of each month;

(3) ACs shall provide plaintiff with an accounting of all payments of living expenses, business expenses, and any transfers of assets made pursuant to this order within ten (10) days following the end of each month.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that ACs shall serve upon plaintiff's attorneys, within ten (10) days from the date of service of this order, copies of all accountant's reports, bank statements, certificates of deposit notes or bonds, checking accounts, money market or securities accounts, savings accounts or other financial institution records showing investments or deposits, and documents indicating title to any real or personal property in each Contemnor's actual or constructive possession or control; and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that on two (2) days written notice to the court and plaintiff, any Contemnor may appear and move for the dissolution or modification of this order; and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this order shall be served upon ACs' or their counsel of record, along with the moving papers and all supporting documents, within five (5) business days of the date of this order, or such time as may be extended by this court; and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that ACs' answering papers, if any, shall be filed with the clerk of this court and served upon the attorneys for plaintiff, by delivering copies to the offices of Thomas C. Frost, Esq., The Frost Firm, 301 Santa Fe Drive, Encinitas, CA  92024, via email addressed to

1. tfrost@thefrostfirm.com on or before September 6, 2924 and served in Chambers
2. Courtroom 10C.  Any response to be filed by plaintiff and served upon the attorneys
3. for ACs on or before orally not later than September 11, 2024.  *Reebok Int'l Ltd. v.*
4. *Marnatech Enters.*, 737 F. Supp. 1521, 1522-1524.

SO ORDERED: August 29, 2024

_____

United States District Judge