UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-01061-JVS-ADS | Date | May 9, 2025 |
| Title | AK Futures LLC v. Smoke Tokes LLC et al | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| | |
|---|---|
| Elsa Vargas | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:   **[IN CHAMBERS] Order Regarding Order to Show Cause re Contempt [107], Motion for Attorneys' Fees [106]**

Before the Court are two motions.  First is an order to show cause why Defendant Smoke Tokes LLC ("Smoke Tokes"), and related parties Raheel Lakhany, Shafaq Sattar, and ST & Company, LLC (collectively "Related Parties") should not be held in civil contempt of violating Court orders.  (Order to Show Cause re Contempt ("OSC"), Dkt. No. 107).  As ordered by the Court (Order, Dkt. No. 153), AK Futures LLC's ("AK Futures") filed its supplemental brief (Supplement to Application for Contempt ("Contempt Suppl."), Dkt. No. 154), and Smoke Tokes responded to the OSC (Response ("Contempt Response"), Dkt. No. 156).

Second is AK Futures' motion for attorney fees.  (Mot., Dkt. No. 106.)  Smoke Tokes opposed.  (Opp'n, at 155.)  AK Futures replied.  (Reply, Dkt. No. 157.)  A hearing on these motions was held on April 28, 2025.

For the following reasons, the Court makes the following rulings:

- Smoke Tokes is found in contempt of violating the permanent injunction on three separate occasions.

- The Court awards AK Futures compensatory sanctions of $150,000 for violating the injunction, and $101,636 in attorneys' fees associated with the contempt motion.
  - The Court grants AK Futures seven (7) days to brief the issue of third-party costs incurred in investigating and enforcing the permanent injunction in relation to the contempt motion.  The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:21-cv-01061-JVS-ADS                    Date   May 9, 2025

Title   AK Futures LLC v. Smoke Tokes LLC et al

> supplemental brief should be filed no later than May 16, 2025.
> Smoke Tokes may file a response by May 23, 2025.
> - AK Futures should concurrently file a proposed final judgment.

- AK Futures' motion for Attorneys' Fees is granted and AK Futures is entitled to an award of post-judgment attorneys' fees of $163,111 and $3,790 in third-party costs.

## I. BACKGROUND

The history of this case is extensive and well-known to both parties. (See Dkt. Nos. 26, 30, 65, 95.) On December 8, 2021, this Court issued a Judgment and Permanent Injunction against Smoke Tokes after granting AK Futures' Motion for Default Judgment. (Permanent Injunction ("Judgment"), Dkt. No. 26.) On January 13, 2022, the Court awarded attorney's fees. (Dkt. No. 30.) The Permanent Injunction enjoined Smoke Tokes and its representatives from reproducing and selling any products that infringed on AK Futures' CAKE trademarks or copyrights. (Judgment ¶ E.) Smoke Tokes was also instructed to destroy any products that infringed on AK Futures' intellectual property. (Id. ¶ F.) The total Judgment amount totaled $244,152.50, consisting of $150,000 on AK Futures' copyright claim, $92,656.45 of attorney's fees, and costs of $1,495.95. (See Judgment, Dkt. No. 26; Attorneys' Fees Order, Dkt. No. 30; Default Judgment Order, Dkt. No. 20.)

Approximately six months later, AK Futures obtained a Writ of Execution ("Writ") on the money judgment of $244,152.40. (Dkt. No. 34.) Three months later, AK Futures moved *ex parte* for an order enforcing the Judgment, which the Court granted on November 16, 2022. (Dkt. Nos. 35, 36.) Pursuant to the Court's Order ("Enforcement Order"), AK Futures was entitled to seize and levy upon Smoke Tokes's property. (Dkt. No. 36.)

On December 7, 2022, AK Futures prepared and filed a "Memorandum of Costs After Judgment" ("Memorandum of Costs"). (Dkt. No. 40.) It appeared that the Frost Firm on behalf of AK Futures added post-judgment costs of $390,171.00, consisting of unexplained "third party costs," an estimate of levying officers costs to be incurred later, unpaid interests, and attorney's fees for work performed after the Judgment. (Id.) Using this Memorandum of Costs, counsel for AK Futures prepared a Notice of Levy showing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:21-cv-01061-JVS-ADS                    Date   May 9, 2025

Title   AK Futures LLC v. Smoke Tokes LLC et al

an amount to be collected of over $658,738.60.  (Notice of Levy, Dkt. No. 43-1.)  However, the Judgment amount was $244,152.40.  (Judgment ¶ D.).  The Court has admonished AK Futures on this matter on multiple occasions.

The execution of the Writ took place on December 9, 2022.  (Dkt. Nos. 42, 65 (discussing the history of the enforcement proceedings).)  Mr. Frost, counsel for AK Futures, presented the U.S. Marshals with the Notice of Levy and the Memorandum of Costs.  Counsel for Smoke Tokes, Mr. Kroger, was informed that all of Smoke Tokes' inventory was to be seized by the end of the day and tendered a cashier's check in the amount of $658,738 for an immediate cessation of the seizure, but raised objections to the amount.  (Dkt. No. 43.)  The Court later issued an order, backdated to December 9, 2022, deeming the judgment satisfied.  (Dkt. No.144.)  The Marshals returned the Writ on December 15, 2022, stating it received $658,738, which is to be applied against judgment.  (Dkt. No. 44.)

After January 23, 2023, hearing on the Court's Order to Show Cause re Writ of Execution, the Court found that the Enforcement Order was properly executed, except for the amount of cash that was seized, and concluded that AK Futures was entitled to reasonable attorney's fees incurred to enforce the Judgment.  (Dkt. No. 65.)  AK Futures was ordered to return the excess amount to Smoke Tokes and to file a motion for post-judgment fees.  (Id.)

On March 28, 2023, AK Futures filed its first contempt motion.  (Dkt. No 84.)  It was denied for failure to meet and confer under L.R. 7-3.  (Dkt. No. 93.)  On August 9, 2023, the Court then denied the Motion for post-judgment attorneys' fees because AK Futures never renewed its contempt motion, without which the Court could not determine the appropriate attorneys' fees.  (Dkt. No. 99.)

More than a year later, on July 26, 2024, AK Futures refiled its Application for an Order to Show Cause regarding Smoke Tokes and Related Parties' alleged contempt (Appl. for Contempt, Dkt. No. 105.)  It also refiled an Application for Attorneys' Fees and Costs on July 29, 2024.  (Dkt. No. 106.)  The Court granted the application and ordered Smoke Tokes and Related Parties to appear and show cause why they should not be held in civil contempt.  (OSC, Dkt. No. 107.)  Following an *ex parte* application, the Court granted Smoke Tokes' former counsel's request to withdraw as an attorney on August 8, 2024.  (Dkt. No. 109.)  As Smoke Tokes was then unrepresented by counsel,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:21-cv-01061-JVS-ADS                    Date   May 9, 2025

Title        AK Futures LLC v. Smoke Tokes LLC et al

the Court vacated all hearings until it obtained proper counsel.  (Dkt. No. 111.)  AK Futures filed an *ex parte* Application for a Temporary Restraining Order ("TRO") and Preliminary Injunction on August 28, 2024, while Smoke Tokes was still unrepresented.  (Dkt. No. 114.)  The Court denied AK Future's application.  (Dkt. No. 141.)  After Smoke Tokes obtained new counsel, AK Futures filed a motion to reschedule the hearing on the pending contempt and attorneys' fees motions.  (Dkt. No. 147.)

The Court granted the motion and now takes up the two motions.

## II.  ORDER TO SHOW CAUSE RE CONTEMPT

### A.      Legal Standard

District courts have inherent and statutory authority to enforce compliance with orders through civil contempt.  Spallone v. United States, 493 U.S. 265, 276 (1990); 18 U.S.C. § 401.  Civil contempt is a "severe remedy," so "principles of 'basic fairness requir[e] that those enjoined receive explicit notice' of 'what conduct is outlawed' before being held in civil contempt."  Taggart v. Lorenzen, 587 U.S. 554, 561 (2019) (alteration in original) (citation omitted).

To hold a party in civil contempt, the Court must find, based on clear and convincing evidence, that (1) the party violated a court order, (2) beyond substantial compliance, and (3) not based on a good faith and reasonable interpretation of the order.  See id. at 561–62.  Violation of a court order is shown by the party's "failure to take all reasonable steps within the party's power to comply."  Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006).  If the moving party meets its burden, the burden "then shifts to the contemnors to demonstrate why they were unable to comply."  F.T.C. v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting Stone v. City & Cnty. of S.F., 968 F.2d 850, 856 n.9 (9th Cir. 1992)).

To meet the clear and convincing standard, the moving party must "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable."  Colorado v. New Mexico, 467 U.S. 310, 316 (1984) (internal quotation marks and citation omitted).  Civil contempt "should not be resorted to where there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct."  Taggart, 587 U.S. at 561 (alteration in original) (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:21-cv-01061-JVS-ADS                    Date    May 9, 2025

Title    AK Futures LLC v. Smoke Tokes LLC et al

Once a court finds a party in contempt, it has the discretion to impose sanctions. Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir. 1986).  Sanctions "may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both."  Id. at 1380 (citing United States v. United Mine Workers, 330 U.S. 258, 303–04 (1947)).  Coercive sanctions are payable to the court, and should be designed to bring about the desired result and to reflect the character and magnitude of harm if that result is not achieved.  Id.  Compensatory sanctions are payable to the wronged party, and must be based on the actual losses resulting the contemptuous conduct.  Id.

*B.    Discussion*

1.    Contempt Finding

The Court addresses the twenty-five alleged violations in AK Futures' contempt application.  (Appl. for Contempt, at 9–13.)  As previously clarified in the Court's preliminary injunction order, the first fourteen allegations have no merit as they occurred before the permanent injunction issued on December 8, 2021.  (Preliminary Injunction Order, Dkt. No. 141, at 5.)  The Court found that only four of the twenty-five allegations in the application and the supplemental brief[1] continue to be supported by enough evidence to meet the clear and convincing standard.  (Id.)  The Court therefore focuses on these four grounds for contempt.

First, AK Futures alleges that Smoke Tokes' website still marketed a CAKE product as of October 3, 2022.  (Appl. for Contempt, at 12; Id. Ex. 23.)  Smoke Tokes responds that it did not "market, sell and distribute counterfeit Cake branded goods" because the screenshot of its website clearly shows the product as "sold out."  (Contempt Response, at 10.)  Smoke Tokes also contends that AK Futures' principals, Peter Amato and James Clelland, authorized and approved "Lookah Seahorse Pro" device, the product at issue.  (Id.; Lakhany Decl.., Ex. C.")  The communications attempt to show that they

---

[1]For example, AK Futures alleges that Smoke Tokes' affidavits were untruthful because it failed to candidly divulge that Shahih Jumani serves as a co-owner of Smoke Tokes.  (Contempt Suppl., at 5–6.)  However, failure to correctly identify an individual does not amount to finding contempt.  AK Futures does not provide any further allegations to suggest that this is a "ruse" ad does not meet the clear and convincing standard.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:21-cv-01061-JVS-ADS                          Date    May 9, 2025

Title          AK Futures LLC v. Smoke Tokes LLC et al

actively approved the design and therefore are not counterfeit.  However, these communications occurred prior to the permanent injunction and do not shield Smoke Tokes from its clear violation of the Court's order.  (Judgment ¶ E.ii.)

However, the Court does not find this contempt allegation supported by clear and convincing evidence.  The screenshot of the website does not have a time stamp to suggest that this was indeed the case as of October 3, 2022.  Moreover, Smoke Tokes attests that it was unaware the product still appeared on its website.  (Contempt Response, at 10.)  While displaying the CAKE design is a clear violation of the permanent injunction, the Court finds this an inadvertent and isolated incident that is not a basis for civil contempt.

Smoke Tokes is less successful as to the other three allegations.  Second, AK Futures alleges that on May 10, 2022, AK Futures' investigators "observed, photographed and purchased dozens of unauthorized and inauthentic CAKE-branded products on display offered for sale at [Related Parties'] new Smoke Tokes Superstore located at 401 East 2nd Street in Los Angeles, California 90012,"  in violation of the permanent injunction.  (Appl. for Contempt, at 12; May 10, 2022 Investigative Report, Dkt. No. 105-22, Ex. 21.)

In response, Smoke Tokes contends that the products were "authentic CAKE-branded products that Smoke Tokes lawfully acquired directly from [AK Futures'] own wholesaling arm, WM Wholesale LLC in May 2021— prior to the issuance of the permanent Injunction."  (Contempt Response, at 6; Declaration of Raheel Lakhany ("Lakhany Decl."), Dkt. No. 156-1 ¶ 4; Lakhany Decl. Ex. A ("Invoice").)   Smoke Tokes submits receipts of its purchase from WM Wholesale as evidence that the products are authentic.[2]  (See Invoice.)

Third, AK Futures' July 7, 2022 Investigative Report found CAKE-branded products and packaging in Smoke Tokes' store.  (July 7, 2022 Investigative Report, Dkt. No. 105, Ex. 22.)  Smoke Tokes argues that the products AK Futures observed on July 7, 2022 were also authentic, purchased from AK Futures' authorized distributors, WM

---

[2]Court notes that the invoice from 2021 does little to show that they were the same authentic products discovered next year, in the May 2022 Investigative report, but the receipts raise serious doubt as to the allegations that Smoke Tokes was selling inauthentic products.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:21-cv-01061-JVS-ADS                    Date   May 9, 2025

Title         AK Futures LLC v. Smoke Tokes LLC et al

Wholesale or American Distributors LLC.  (Lakhany Decl. ¶ 6.)  Smoke Tokes provides as evidence an invoice of its June 21, 2022 purchase from American Distributors.  (Id. Ex. B.)  However, AK Futures' investigators were able to purchase the prohibited Lookah products, and when the CAKE products were analyzed by its packaging expert, Taylor Carrol, she confirmed that the products were inauthentic.  (Declaration of Thomas Frost ("Frost Contempt Decl."), Dkt. No. 105-1 ¶ 27.)  Therefore, this instant violation appears more egregious than selling authentic products that were allegedly a result of a misunderstanding of the injunction.

Fourth, AK Futures alleges that U.S. Marshals seized 276 Cake branded "Infused Cones" and 120 Cake branded "1010 Batteries" on December 9, 2022.  (Appl. for Contempt, at 13; Evidence Property Receipt, Dkt. No. 50-1.)  Again, Smoke Tokes responds that it sold authentic CAKE products and it believed, "mistakenly, but in good faith" that the injunction only prohibited counterfeit products.  (Contempt Response, at 10.)

The Court finds the last three contempt allegations have merit.  The December 8, 2021 injunction was clear, serving as an "'explicit notice' of 'what conduct is outlawed.'" See Taggart, 587 U.S. at 561 (citation omitted).  It permanently restrained Smoke Tokes and Related Parties from "reproducing, distributing copies of, and/or *displaying to the public the cake design that is the subject of U.S. Copyright Reg. No. VA 2-247-632 or any colorable imitation* thereof."  (Judgment ¶ E.ii) (emphasis added).  It also ordered Smoke Tokes and Related Persons to "*destroy* all products, labels, signs, prints, packages, wrappers, receptacles, boxes, files, images, advertisements, and promotions or materials in any other form in their possession *that depicts, uses, or copies* AK Futures' intellectual properties."  (Id.) (emphasis added.)

The standard for civil contempt is an "objective one," and a "party's subjective belief that [it] was complying with an order ordinarily will not insulate [the party] from civil contempt if that belief was objectively unreasonable."  Taggart, 587 U.S. at 561. The Court was clear in its injunction order that Smoke Tokes was not authorized to sell inauthentic as well as authentic CAKE products that display AK Futures' intellectual property.  No reasonable interpretation of the order suggests otherwise and Smoke Tokes' very sale of authentic CAKE products provides "clear and convincing evidence" that Smoke Tokes violated the Court's order "beyond substantial compliance."  Id. at 561.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:21-cv-01061-JVS-ADS                              Date   May 9, 2025

Title        AK Futures LLC v. Smoke Tokes LLC et al

Smoke Tokes responds that it was "unaware of the full implications of [its] obligation due to their default in this action and lack of legal counsel at the time." (Contempt Response, at 7.)  However, a careful reading of the injunction by even a layperson would have yielded a reasonable understanding that it could not sell products with a CAKE mark or design.  (See Judgment ¶ E(i).)  Accordingly, the Court finds Smoke Tokes in contempt of the Court's permanent injunction on three separate occasions.

            2.       Civil Contempt Sanctions

A court can impose sanctions for civil contempt for two purposes: (1) to coerce the defendant into compliance with a court order or (2) to compensate the plaintiff for losses sustained.  United States v. United Mine Workers of Am., 330 U.S. 258, 303 (1947); Shuffler v. Heritage Bank, 720 F.2d 1141, 1147 (9th Cir. 1983); Shell Offshore Inc. v. Greenpeace, Inc., 815 F.3d 623, 630 (9th Cir. 2016). Where the fine is coercive to force a defendant to comply with the court order, the fine is payable to the court.  General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986).  If a complainant is entitled to compensation, the fine imposed must be based upon evidence of the complainant's "actual losses" sustained as a result of the contumacy.  United Mine Workers of Am., 330 U.S. at 304.

As of this date, Smoke Tokes and Related Parties already complied with the Court's order, albeit 33 months after the injunction was issued.  Thus, the only remedial civil sanction available to AK Futures now is compensation for its losses suffered as a result of the contumacy.

AK Futures requests that the Court award either the total gross proceeds generated by the enjoined sales (allegedly by $2,471,472.80) or the maximum statutory damages permitted under the Copyright Act.  (Contempt Appl., at 25–27.)  While lost profits may be considered for civil contempt, they must be "based upon the 'pecuniary injury or damage' which the act of disobedience caused the complaining party, including such reasonable expenses as were incurred in the bringing of the proceeding."  Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 455 (1932).  Not only does AK Futures fail to disclose how it arrived at this astronomical number, but it does not argue how the profits are tethered to an actual loss.  (Contempt Response, at 13–14.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:21-cv-01061-JVS-ADS                         Date   May 9, 2025

Title   AK Futures LLC v. Smoke Tokes LLC et al

Similarly, Smoke Tokes argues that AK Futures is entitled to statutory damages because it has not provided any evidence of the loss sustained as a result of its violations. (Contempt Response, at 13.)  However, in copyright cases, courts have turned to statutory damages in awarding compensatory contempt sanctions because it is difficult to ascertain the monetary value of intangible harm.  See Oracle USA, Inc. v. Rimini Street, Inc., 81 F.4th 843, 858–59 (9th Cir. 2023) (upholding sanctions of $100,000 for each of the willful contempt findings and $30,000 for the one non-willful finding); see also BMG Music v. Perez, 952 F.2d 318, 320 (9th Cir. 1991) (upholding contempt sanction of $10,000 per violation of injunction as not an abuse of discretion given that it was "an amount no greater than the statutory damages for the resulting copyright infringement"); Adobe Sys. Inc. v. Software Tech, No. 5:14-CV-02140-RMW, 2015 WL 6951875, at *5–6 (N.D. Cal. Nov. 10, 2015) (awarding sanctions based on statutory damages at $100,000 per infringed copyrighted work).  Where appropriate, 17 U.S.C. § 504(c)(1)–(2) permits statutory damages of "not less than $750 or more than $30,000" for a non-willful infringement and "not more than $150,000" for an infringement "committed willfully."  Nevertheless, the Court has "wide discretion" in setting the amount of damages within the statutory range.  Harris v. Emus Records, 734 F.2d 1329, 1335 (9th Cir.1984).

In Oracle, the Ninth Circuit affirmed a sanctions award of $30,000 for a non-willful violation where the defendant's client failed to follow instructions, violating the permanent injunction.  81 F.4th at 859.  In situations where the court awarded $100,000, the defendant had repeatedly infringed on Oracle's product by possessing the copyrighted files on its local systems.  Oracle USA, Inc. v. Rimini St., Inc., 2022 WL 112187, at *34 (D. Nev. Jan. 12, 2022), aff'd in part, vacated in part, rev'd in part, 81 F.4th 843 (9th Cir. 2023).

Upon review, the Court imposes a sanction of $50,000 for each of the three willful contempt findings.  The Court previously found Smoke Tokes had willfully infringed on AK Futures' copyright and awarded $150,000.  (Judgment ¶ B.)  Again, the Court finds these instances willful violations of the Court's order.  Although Smoke Tokes contests that it believed the injunction did not apply to authentic products, AK Futures demonstrates that Smoke Tokes was selling inauthentic products as of July 2022.  (Frost Contempt Decl. ¶ 27.)  Moreover, its invoice from May 2021 fails to substantiate Smoke Tokes' claim that the products in May 2022, the following year, were also authentic. (See Lakhany Decl. Ex. A.)  By claiming that it obtained authentic products from AK

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:21-cv-01061-JVS-ADS                    Date  May 9, 2025

Title       AK Futures LLC v. Smoke Tokes LLC et al

Futures' distributors, Smoke Tokes suggests that it has not only violated the injunction on just these three days, but has continued to sell CAKE products until December 9, 2022, when the Marshals attempted to seize the products.  Thus, the violations were "extensive [] and pervasive" to reach a level of willfulness.  See Oracle USA, Inc. v. Rimini St., Inc., 2022 WL 112187, at *34 (D. Nev. Jan. 12, 2022).

Furthermore, it is clear that Smoke Tokes did not fully comply with the permanent injunction until September 24, 2024, when it filed its Report of Compliance, almost three years after the Court issued the injunction.  (Report of Compliance, Dkt. No. 140.)  This too must be considered in the sanctions as failure to report compliance may indicate to a party of its state of perpetual injury.  While Smoke Tokes may not have had the opportunity to understand the full implications of the permanent injunction at the time, it obtained counsel the following year.  And even after obtaining legal counsel and AK Futures' multiple contempt applications, it did not properly comply with the injunction. Without explaining when the parties came to understand the full scope of their obligations, Smoke Tokes simply contends that it "swiftly rectified" its conduct. (Contempt Response, at 10.)

There is no doubt that it was extremely reckless of Smoke Tokes and Related Parties to misunderstand what was otherwise a clear order.  Yet, the Court takes into account the fact that Smoke Tokes defaulted and did not have legal representation at the time the injunction was issued.  Therefore, instead of imposing the statuary maximum, the Court finds a sanction of $50,000 for each violation as acceptable statutory damages, befitting the remedial purpose of compensatory sanctions.

Additionally, in assessing the actual losses suffered, the Court also awards AK Futures its investigative third-party costs[3] for the three alleged occasions.  Investigative Consultants billed a total of $22,572.48.  (Declaration of Thomas Frost ("Frost Decl. "), Dkt. No. 106, Ex. L.)  AK Futures attests it depended on the services of Investigative Consultants, an investigative consulting firm, tasked with investigations of alleged violations of the injunction.  (Id. ¶¶ 41–43.)  For example, it was their private investigators who discovered Smoke Tokes Superstore continued to sell unauthorized

---

[3]The Court notes that the third-party costs are related to the Enforcement Order, enforcing the Writ of Execution rather than the permanent injunction.  Thus, the Court will fully address them with AK Futures' motion for post-judgment attorneys' fees.  (See infra Part III.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:21-cv-01061-JVS-ADS                    Date   May 9, 2025

Title     AK Futures LLC v. Smoke Tokes LLC et al

products.  (Id. ¶ 27.)

However, the description of their services in the invoice is extremely vague[4] and not limited to investigating compliance with the injunction[5].  It is also unclear why AK Futures tasked the investigators to find the Related Parties between May and August 2022. This seems entirely unnecessary when the defendants had defaulted and the Court had granted default judgment back in November 2021.  (Dkt. No. 20.)  Moreover, Mr. Frost does not provide comparable rates for this Court to assess whether the investigative fees were reasonable.  As the Court cannot ascertain the investigative fees solely associated with enforcing permanent injunction, the Court declines to grant the entire amount in this motion.  Accordingly, the Court grants AK Futures seven (7) days to brief the third-party costs incurred in investigating and enforcing the permanent injunction.

Lastly, the Court may grant attorneys under its inherent authority, and may "instruct[] a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." Goodyear, 581 U.S. at 107 (internal quotation marks omitted).  Such sanctions against a bad actor are limited to the legal fees the innocent party would not have incurred "but for" the misconduct. Id. at 104, 108.  Such an award is intended to be compensatory, not punitive. Id. at 108–09.  This "granular inquiry" requires a court to evaluate the close causal link between the misconduct and the "individual expense items or categories of such items." Lu v. United States, 921 F.3d 850, 863 (9th Cir. 2019).  Accordingly, the Court will take up the appropriate attorneys' fees related to the contempt motion contemporaneously with AK Futures' motion for post-judgment attorneys' fees.  (See infra Part III.)

Smoke Tokes contends that AK Futures cannot recover attorneys' fees against non-parties— Raheel Lakhany, Shafaq Sattar[6], and ST & Company, LLC—to the

---

[4]For example, it is unclear which "multiple locations pertaining to this matter were visited" and description all has a general statement, "The investigator conducted an investigation regarding the abovementioned matter."  (Frost Decl. Ex. L ("IC Invoice").)

[5]They were authorized to investigate matters in connection with post-judgment enforcement more generally, including assets and collectability issues and identities of Related Parties.  (Frost Decl. ¶ 42.)

[6] Individuals Raheel Lakhany and Shafaq Sattar are named Defendants in the Permanent Injunction.  (See Injunction ¶ E.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:21-cv-01061-JVS-ADS                    Date    May 9, 2025

Title       AK Futures LLC v. Smoke Tokes LLC et al

judgment without any showing of corporate veil piercing.  (Contempt Response, at 17–18.)  Smoke Tokes relies on Dewberry Group, Inc. v. Dewberry Engineers Inc.,145 S. Ct. 681 (2025),  to argue that AK Futures can only recover attorneys' fees from named defendants, not affiliates or related entities.  (Contempt Response, at 17.)  Dewberry reiterates the long standing principle that "separately incorporated organizations are separate legal units with distinct legal rights and obligations."  145 S. Ct. 681, 687 (citing Agency for Int'l Development v. Alliance for Open Society Int'l Inc., 591 U.S. 430, 435 (2020).)  Smoke Tokes raises an interesting question for this Court to consider: whether the piercing the corporate veil applies in the context of contempt for violating permanent injunctions.

Without even wading into corporate veil-piercing, the Court finds that ST & Company cannot violate an injunction it was not subjected to—ST & Company was not a named defendant when the injunction was issued.  (See generally, Judgment.)  Contrarily, Raheel Lakhany and Shafaq Sattar were stated by name in the Judgment.  (Judgment ¶ E.)  However, the Court agrees with Smoke Tokes that there was no alter ego or veil-piercing finding to impose liability on the other two defendants.  (Contempt Response, at 18.)  In California, a corporation's liabilities may be imposed on an individual only when: (1) "'there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased,'" and (2) "'an adherence to the fiction of the separate existence of the corporation would. . . sanction a fraud or promote injustice.'"  Firstmark Capital Corp. v. Hempel Fin. Corp., 859 F.2d 92, 94 (9th Cir.1988) (quoting Wood v. Elling Corp., 20 Cal.3d 353, 142 Cal.Rptr. 696, 572 P.2d 755, 761–62 n. 9 (1977)).

Here, AK Futures does not demonstrate that Smoke Tokes falls under either prong or provide the Court to hold these individuals separately liable.  The record indicates that the violations of the permanent injunction occurred in all instances either at Smoke Tokes' Superstore or on its website.  The Court further finds no probable cause to pierce Smoke Tokes' corporate veil nor that any injustice will result by finding only Smoke Totes in contempt.  Therefore, without more, the Court holds Smoke Tokes liable for any attorneys' fees associated with the instant contempt motion.

In conclusion, the Court awards compensatory civil sanctions in the total amount of **$150,000** for violating the injunction, and **$101,636** in attorneys' fees associated with the contempt motion (see infra).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:21-cv-01061-JVS-ADS                    Date   May 9, 2025

Title   AK Futures LLC v. Smoke Tokes LLC et al

### III.  ATTORNEY FEES

*A.     Legal Standard*

The calculation of attorneys' fees is guided by a "lodestar/multiplier" analysis, which is performed by multiplying hours reasonably expended on the litigation by a reasonably hourly rate.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

A party seeking post-judgment fees is entitled only to those that are reasonably and necessarily incurred to enforce the judgment.  To determine whether a fee award is "reasonable," courts perform a two-step process.  First, the Court performs a "lodestar/multiplier" analysis, which is performed by multiplying hours reasonably expended on the litigation by a reasonably hourly rate.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  In setting "a reasonable attorney's fee, the court should make specific findings as to the rate and hours it has determined to be reasonable."  Gracie v. Gracie, 217 F.3d 1060, 1070 (9th Cir. 2000) (quoting Frank Music Corp. v. Metro-Goldwyn Mayer Inc., 886 F.2d 1545, 1557 (9th Cir. 1989)).  To determine reasonable hourly rates, the Court must look to the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation.  Camacho v. Bridgeport Fin., Inc., 523 F.3d 973 (9th Cir. 2008).  The burden of proving the reasonableness of the lodestar figure is on the party seeking fees.  Hensley, 461 U.S. at 437; Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542 (2010); Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 622 (9th Cir. 1993).  Counsel must that the number of hours expended is reasonable by submitting "detailed time records" justifying the hours claimed to have been expended.  Chalmers v. City of L.A., 796 F.2d 1205, 1210 (9th Cir. 1986).

Second, the Court may adjust the lodestar figure "based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided."  Id. (quotation marks and citations omitted); see also Ketchum v. Moses, 24 Cal. 4th 1122, 1132 (2001) ("[T]rial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation.").  The Court may consider the Kerr factors, Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975) to guide its decision.  The Kerr factors have been identified as:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:21-cv-01061-JVS-ADS                Date    May 9, 2025

Title        AK Futures LLC v. Smoke Tokes LLC et al

(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Fischel v. Equitable Life Assurance Soc'y, 307 F.3d 997, 1007 n.7 (9th Cir. 2001) (citing the Kerr factors).  But courts may not adjust the lodestar figure based on any of the foregoing factors that are necessarily subsumed into the original lodestar calculation. Morales v. City of San Rafael, 96 F.3d 359, 364, 364 n.9 (9th Cir. 1996).   The "subsumed" factors are the second, third, sixth, eighth, and ninth factors.  Id. (noting that doing so is a "disfavored procedure," but so long as the court "only makes one adjustment per factor, either before or after the lodestar calculation," the error is harmless).  The Court notes that the first, fifth, and twelfth factors, i.e., the time and labor required, the customary fee, and fee awards in similar cases are likewise subsumed into the original lodestar calculation.

The amount may also be reduced if the hours are duplicative, excessive, or otherwise unnecessary.  Terabyte Int'l, Inc., 6 F.3d at 622.  In such instances, the courts may impose a 10% "haircut" based purely on an exercise of discretion and without a more specific explanation.  Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008); cf. Costa v. Commissioner of Social Security Administration, 690 F.3d 1132 (9th Cir. 2012) (holding that a judge is required to provide specific reasons for reducing the number of hours by a third).  "Although the district court's calculation of an award need not be done with precision, some indication of how it arrived at its figures and the amount of the award is necessary."  Chalmers v. City of Los Angeles, 796 F.2d 1205, 1211 (9th Cir. 1986).

    *B.*    *Discussion*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:21-cv-01061-JVS-ADS                          Date   May 9, 2025

Title   AK Futures LLC v. Smoke Tokes LLC et al

AK Futures seeks a total of post-judgment costs of $556,791.97, including $493,548 in attorneys' fees and $63,243.97 for third-party costs and U.S. Marshal fees. (Mot., at 17.)

1.      Whether AK Futures is Entitled to Post-Judgment Costs

The history of AK Futures' motion for attorneys' fees is sobering. (See supra Part I.) In essence, AK Futures circumvented procedural requirements by improperly attempting to collect attorneys' fees with its Writ of Execution and the Memorandum of Costs on December 9, 2022. (Dkt. No. 40.) The Court then issued an order to show cause why the order enforcing a writ of execution was improperly issued and on January 23, 2023, ordered that the excess amount of $414,586 be returned to Smoke Tokes. (Dkt. No. 65 ("January 2023 Order").) Subsequently, on February 8, 2023, AK Futures separately filed its motion for attorneys' fees. (Dkt. No. 74.) The Court vacated the first motion for failure to properly provide its billing records (dkt. no. 93), and the second motion for failure to renew its contempt motion (dkt. no. 99.) The Court must finally consider this motion on the merits and correct course if necessary.

Rule 69(a) "governs the procedure" that applies to the enforcement of judgments in federal court. The rule applies to "proceedings supplementary to and in aid of judgment." Fed. R. Civ. P. 69(a)(1). The Ninth Circuit has held this includes motions for fees incurred in enforcing a judgment. See Carnes v. Zamani, 488 F.3d 1057, 1060 (9th Cir. 2007). Rule 69(a) further requires the court to apply state law to these proceedings unless there is a federal statute that would apply. As the Copyright Act, 17 U.S.C. § 505 neither expressly allows nor expressly bars recovery of post-judgment costs and fees, California law governs the procedure for recovery here.

California's Code of Civil Procedure allows post-judgment costs and fees: "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law." Cal. Civ. Proc. § 685.040. Here, AK Futures was awarded statutory damages based on its copyright infringement claim in the underlying judgment, so the Copyright Act, 17 U.S.C. § 505, serves as the statutory basis for AK Futures' recovery of costs. As § 505 of the Copyright Act does not bar post-judgment fees, other Ninth Circuit district courts have awarded post-judgment costs and fees in copyright actions. See WB Music Corp. v. Royce Int'l Broad.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:21-cv-01061-JVS-ADS                        Date    May 9, 2025

Title       AK Futures LLC v. Smoke Tokes LLC et al

Corp., No. EDCV 16-600, 2021 WL 4330876, at *3 (C.D. Cal. May 7, 2021) (collecting cases).

A judgment creditor may seek to recover attorney fees incurred in enforcing a judgment by *either* (1) filing a memorandum of costs or (2) by serving a noticed motion. See Carnes, 488 F.3d at 1061 (citing §§ 685.070–0.80)); 16 Cal. L. Rev. Comm. Reports 1235 (1982) ("Section 685.080 also permits the judgment creditor by motion to claim costs that could have been claimed pursuant to the memorandum procedure set forth in Section 685.070."). [7] If the judgment creditor chooses to file and serve the memorandum of costs on the judgment debtor, the judgment debtor will have ten days to file a noticed motion to have the costs taxed by the court. § 685.070(c).

The first method of recovering attorneys' fees incurred in enforcing a judgment is by a noticed motion. § 685.070(b). In the January 2023 Order, the Court granted AK Futures 14 days to file a motion for post-judgment fees if necessary. AK Futures filed its motion for attorneys' fees late, on February 8, 2023. (Dkt. No. 74.) More importantly and as Smoke Tokes makes glaringly clear, there is also a timeliness requirement for post-judgment cost motions. (Opp'n, at 8.) Both Sections 685.070 and 685.080 require that the motion "be made *before* the judgment is satisfied in full, but not later than two years after the costs have been incurred." § 685.070 (emphasis added); see Carnes, 488 F.3d at 1060. The purpose of the time limit in Section 685.080 is "to avoid a situation where a judgment debtor has paid off the entirety of what he [justifiably] believes to be his obligation in the entire case, only to be confronted later with a motion for yet more fees." Lucky United Properties Investment, Inc. v. Lee, 185 Cal. App. 4th 125, 144 (2010). As AK Futures' claim for attorneys' fees is dependent on § 685.040, it was required to comply with the timeliness requirements set forth in sections 685.070 and 685.080. See Carnes, 488 F.3d at 1061.

Smoke Tokes contends that the motion is time-barred because the motion was filed after satisfaction of the judgment. (Opp'n, at 8–16.) Under Section 724.010(a), a money judgment may be satisfied by payment of the full amount. Where a money judgment is satisfied by levy the obligation of the judgment creditor to give or file an

---

[7]Smoke Tokes incorrectly argues that there is only one method to seek post-judgment attorneys' fees. (Opp'n, at 8.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:21-cv-01061-JVS-ADS                    Date    May 9, 2025

Title    AK Futures LLC v. Smoke Tokes LLC et al

acknowledgment of satisfaction arises *only when* the judgment creditor has received the full amount required to satisfy the judgment from the levying officer.  §724.010(b).  Here, Smoke Tokes tendered a cashier's check to the levying officers, the Marshals, for the lump-sum of $658,730.  (Dkt. No. 124, at 9.)  AK Futures alleges it only received the payment from the Marshals weeks after its motion for attorneys' fees.  (Dkt. No. 126, at 4.)  Since AK Futures did not actually receive money satisfying the judgment in full on December 9, 2022, it reasonably believed that the money judgment was not yet satisfied.  Accordingly, it had no obligation to file satisfaction of judgment under Section 724.030 and could file its motion for attorneys' fees.

However, in this case, the date of satisfaction ostensibly conflicts with the requirement of Section 724.020(a), which requires the court clerk to enter satisfaction of a money judgment when a writ is returned satisfied for the full amount of a lump-sum judgment.[8]  Confusingly, the Writ of Execution issued on July 14, 2022 for $244,152.50, was returned fully satisfied on December 15, 2022, following a lump-sum payment of $658,730.00 tendered to the Marshals on December 9, 2022.  (Dkt. Nos. 42, 44.)  Therefore, with the return of the Writ, the judgment was satisfied as of December 9, 2022 and the court clerk should have issued a satisfaction of judgment on December 15, 2022.  Accordingly, the Court granted Smoke Tokes' *ex parte* request that the clerk issue an immediate satisfaction of judgment on October 1, 2024, backdated to December 9, 2022.  (Dkt. No. 144.)  Thus, Smoke Toke is correct that the Judgment should be considered satisfied as of December 9, 2022 and the February 8, 2023 motion for attorneys' fees is time-barred.  Smoke Totes should not be penalized for the inadvertent erroneous action of this court clerk nor for the strategic failure to obtain post-judgment fees by AK Futures.

Notwithstanding the failure to enter satisfaction, AK Futures should have been aware that the judgment was fully satisfied as of December 9, 2024, when it attempted to collect $414,568 more than was entitled to at the time, an amount that included it alleged attorneys' fees and costs of enforcement.  However, it continued to file more than four affidavits for a writ of execution with the clerk to enforce a judgment that had already been satisfied.  Though the Court ordered that the amount improperly seized be returned

---

[8]Contrary to AK Futures' claim, the obligation to file a satisfaction of judgment is then not on Smoke Tokes.  (See Reply, at 5.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:21-cv-01061-JVS-ADS                    Date   May 9, 2025

Title       AK Futures LLC v. Smoke Tokes LLC et al

weeks later (dkt. no. 65), AK Futures was undisputedly aware that Smoke Tokes had paid the full $658,738 to the Marshals on December 9, 2022.

Nevertheless, Smoke Tokes completely discounts the alternative avenue for relief. Mr. Frost filed a Memorandum of Costs to recover attorneys' fees incurred in enforcing the judgment, though the process was procedurally defective. (Dkt. No. 40.)  Section 685.070(b) requires that a copy of the memorandum of costs be served on the judgment debtor and Mr. Frost failed to do so when his Memorandum of Costs did not identify when or how Smoke Tokes was served.  (January 2023 Order, n.2.)  The proof of service page in the memorandum of costs form was left blank and unsigned.  (Dkt. No. 40.)  The U.S. Marshals Process Receipt and Return, (Dkt. No. 50), shows Smoke Tokes and Related Parties were served a copy by the Marshals when they were executing the Court's Enforcement Order.  The Court previously found this to be a dispositive error because after a copy of the memorandum of costs is served on the judgment debtor, the judgment debtor has ten days to file a noticed motion to have the costs taxed by the court.  § 685.070(b)–(c); (see Dkt. No. 141.)  In other words, Section 685.070(b) does not allow for this service to be made by a different entity because, without proper service, the judgment debtor cannot file this motion.  Therefore, the Court reiterates that AK Futures did not properly seek post-judgment attorneys' fees under Section 685.070(b).  Nevertheless, there is no doubt Smoke Tokes received a copy of the Memorandum of Costs attached to the Writ of Execution on December 9, 2022 at 8 a.m., presumably prior to tendering its cashier's check.  Accordingly, the Court ascertains that the memorandum of costs was served moments prior to satisfaction of the judgment.  AK Futures filed its Memorandum two days prior, and served it within the time limit of Section 685.070(b), by a matter of hours if not minutes, to recover the costs of enforcing the judgment.

The Court notes that the outcome of this issue is a result of the faults made by all parties.  First and foremost, the Court has repeatedly admonished AK Futures to inflate and improperly collect the judgment amount.  (See January 2023 Order.)  It also should have properly served the Memorandum of Costs under Section 685.070(b), which unambiguously sets out the procedural requirements.  Having received the Memorandum, Smoke Tokes should have then filed a motion to dispute these costs within ten days under Section 685.070(c).  Moreover, the issue of timeliness for the motion for attorneys' fees was brought to the Court's attention for the first time in late 2024, with the appearance of Smoke Tokes' new attorney and its *ex parte* for the clerk to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:21-cv-01061-JVS-ADS                                Date   May 9, 2025

Title        AK Futures LLC v. Smoke Tokes LLC et al

enter satisfaction of judgment.  (Dkt. No. 124.)  Yet, beginning at least from January 23, 2023, AK Futures has clearly met and conferred with Smoke Tokes' prior counsel, "vigorously litigated" the reasonableness of its post-judgment attorneys' fees, and invested "substantial additional attorney time" based on an understanding that the parties would continue with the fee motion.  (Reply, at 4–5.)  While the record does not reflect that Smoke Tokes has waived its timeliness objection at any time, it is evident that both parties and this Court worked under the assumption that AK Futures would be able to bring its motion for attorneys' fees.  AK Futures, too, should not be punished for Smoke Tokes' prior counsel's failures to raise these objections sooner.  In conclusion, it is entitled to payment for the time the attorneys spent on bringing this motion.

         2.        Lodestar Analysis related to Enforcement of Judgment

              a.        **Hourly Rate**

      While Smoke Tokes does not dispute the reasonableness of the hourly rates, a party's non-opposition does not discharge the district court of its duty to assess the reasonableness of hourly rates.

      Mr. Thomas Frost, managing partner, charges a rate of $725/hour; Mr. Jonathan A. Stein, senior trial attorney, charges a rate of $625/hour; Mr. Georg Capielo, senior associate, charges $500/hour, and paralegals charge $195/hour.  (See Frost Decl., at 16.)  The billing records also show work performed by Shawn Leo, another senior associate, who bills at a rate of $500/hour.  (See id. Ex. A.)  The Court finds these rates reasonable, considering both the qualifications of the attorneys and the rates at comparable law firms.  (Id.)

              b.        **Fees Sought**

      AK Futures provides the Court with categories by date and task.  (See i.d. Ex. K.)  With respect to the enforcement of the judgment, AK Futures requests in total, attorneys' fees of $311,885[9] (without contempt motion fees).  AK Futures claims that all duplicative hours (207 hours) were removed.  (Id. Ex. I.)

---

      [9]81,635 + 12,262 + 60,770 + 128,481.255 + 18,010 + 10,726.75 = 311,885.005

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:21-cv-01061-JVS-ADS                    Date    May 9, 2025

Title    AK Futures LLC v. Smoke Tokes LLC et al

According to its records, from December 29, 2021 through January 31, 2022, AK Futures' attorneys conducted a collectability assessment and analysis of available injunction enforcement strategies, totaling $10,726.75.  (Id. ¶ 24; Id. Ex. A.)

From May 10, 2022 to July 12, 2022, AK Futures' attorneys used private investigators and analyzed alternative enforcement remedies, totaling $18,010.  (Id. ¶¶ 27–29; Ex. C.)

From July 13, 2022 to October 14, 2022, AK Futures refined its strategy, drafted the ex parte application for an enforcement order, memorandum of points and authorities, and writs of execution, totaling $128,481.25.  (Id. ¶¶ 29–30; Ex. D.)

From November 17, 2022, through December 8, 2022, AK Futures prepared for the execution of the Court's enforcement order, including preparations for the Marshals' execution on December 9, 2022 and documents required for enforcement.  (Id. ¶¶ 31–32; Ex. E.)  The total associated with these tasks was $60,770.  (Id. Ex. E.)

On December 8, 2022, the Frost Firm executed the enforcement order, totaling $12,262.50 in attorneys' fees.  (Id. ¶ 33; Ex. F.).

From December 10, 2022 to January 23, 2023, the attorneys prepared reports regarding the enforcement of the judgment as a hearing was set for December 19, 2022 in the Court's order, totaling $81,635.  (Id. ¶ 34; Id. Ex. G).

### c.    Reasonableness of hours expended

The Court begins by emphasizing that Frost Firm has already once attempted to unilaterally collect a substantial amount of unexplained legal fees.  Accordingly, the Court approaches counsel's instant fee motion with a healthy dose of requisite skepticism.  With the foregoing in mind, the Court carefully evaluates counsel's billing records for any excessive padding of legal fees or duplicative efforts.

Excluded Hours Relating to Improper Enforcement of Writ:  AK Futures is not entitled to collect on its efforts to unilaterally tack on and collect post-judgment amounts.  This includes time preparing for filing new writs of execution to collect post-judgment costs.  For example, Mr. Frost filed numerous Affidavits and Requests for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:21-cv-01061-JVS-ADS                    Date   May 9, 2025

Title   AK Futures LLC v. Smoke Tokes LLC et al

Issuance of Writ of Execution with the Court.  (Dkt. No. 52 (filed on January 5, 2023); Dkt. No. 55-1 (filed on January 8, 2023).)  The Court calculates that Mr. Frost and Mr. Stein together spent approximately 50 hours drafting and revising the Writs of Execution.  But each time, the Clerk of the Court rejected the requests because the documents were inadequately prepared. (Dkt. Nos. 54, 56, 59, 95.)  Furthermore, AK Futures disregarded the Clerk's January 12, 2023 notice that AK Futures could not seek a writ with post-judgment costs without a court order.  The Court rejects any hours expended relating to its writs of execution—preparation as well as the order to show cause hearing (most entries in Exhibit G)—as the time expended on the Writs were of AK Future's own making.

Excessive and Duplicative Preparation: The Court recognizes AK Futures' effort to eliminate duplicative time entries, amounting to 207 hours.  (Id. Ex. I.)  However, the Court still finds that the staggering number of hours exerted on legal research on the enforcement of judgment was excessive and not utilized effectively.  First, it was not necessary to utilize only the firm's most senior members (partner and most senior associate) to conduct nearly all work in this matter when the research, analysis, and outlining of tasks could have been completed more efficiently by its more mid-level associates or even paralegals.  For example, Mr. Frost spent over twelve hours on legal research on caselaw for enforcing judgments via *ex parte*.  (Id. Ex. D, at 3.)  The fact that legal work can be done by a junior associate does not alone render that partner's work unreasonable.  But Mr. Stein, the firm's "senior trial" attorney, performed almost 50% of *all* legal work in this case.  Counsel spent an exorbitant amount of time preparing for a relatively uncomplicated enforcement matter.  For instance, Mr. Stein spent over 80 hours drafting and revising the *ex parte* application to enforce judgment, including assembling and organizing exhibits.  This was unreasonable.  (Id.)

Block Billing: AK Futures utilizes block billing, a method of billing that fails to itemize each task individually in the billing records, for all of the time billed on this matter.  This complicates the Court's ability to assess the reasonableness of the hours incurred because many entries include tasks that AK Futures is not entitled to recover.  The time requested should be reduced if block billing makes it impossible to evaluate the reasonableness of the time.  See Shayler v. 1310 PCH, LLC, 51 F.4th 1015, 1020 (9th Cir. 2022) (upholding a 65% downward multiplier in a "straightforward" matter involving an excess of legal work); Welch v. Metropolitan Life Ins. Co., 480 F.3d 942,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:21-cv-01061-JVS-ADS                    Date    May 9, 2025

Title       AK Futures LLC v. Smoke Tokes LLC et al

948 (9th Cir. 2007); see also Mendez v. County of San Bernardino, 540 F.3d 1109, 1129 (9th Cir. 2008).

Returning the lodestar analysis, without any reduction, the Court finds AK Futures is entitled to $203,889: Mr. Frost spent 151.85 hours and his hourly rate is $725; Mr. Stein spent 138.5 hours and his hourly rate is $625; Mr. Leo spent 4.9 hours and his rate is $500.  However, after a careful review of the billing records and declarations, the Court found that the fee request suffers from pervasive issues of block billing, excessive and unnecessary preparation and filings, inefficient legal and administrative tasks.  (See supra.)  For these reasons, the Court imposes a reduction of twenty percent (20%), totaling **$163,111** in post-judgment attorneys' fees.

> 3.      Third-Party Fees to Enforce the Writ

Next, the Court turns to the third-party costs related to enforcing the judgment.

First, the Court grants **$2,790**, the amount AK Futures paid to the Marshals for the six-hour levy on December 9, 2022 to enforce.  (Declaration of Thomas Frost ("Frost Decl. "), Dkt. No. 106 ¶ 47; Id. Ex. O.)

AK Futures used the services of R.L Spear Co., Inc ("R.L. Spear"), to assist U.S. Marshals' execution of the Enforcement Order on December 9, 2022 on their behalf.  (Id. ¶ 44.)  R.L. Spear assisted the Marshals and AK Futures' representative "by performing valuations and disposition analyses regarding the various inventory and other assets subject to levy pursuant to the terms of the Enforcement Order."  (Id.)  The cost for their services was **$1,000**.  (Id. Ex. M.) The Court finds their services reasonably necessary and grants this amount.

However, the Court cannot identify the necessity of the other third-party costs. AK Futures attests it depended on the services of Investigative Consultants, to investigate assets and collectability issues; identities and activities of Related Parties; and ongoing violations of the injunction.  (Id. ¶¶ 41–43.)  Investigative Consultants billed a total of $22,572.48.  (Id. Ex. L.)   The Court previously found their services may be related to finding violations against the permanent injunction, rather than the writ of execution.  (See supra.)  The Court is inclined to award third-party costs associated with the actual investigation of violations of the permanent injunction, but not more.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:21-cv-01061-JVS-ADS                              Date    May 9, 2025

Title    AK Futures LLC v. Smoke Tokes LLC et al

Finally, the Court seriously questions the need to enlist the services of Consilio, which totaled $35,381.49. (Id. ¶ 45.) AK Futures claims that it used Consilio to perform all the mirror imaging services required by the Enforcement Order. (Id.) While the Court directed the Marshals to mirror image the contents of any electronic devices if requested, there is no reasonable basis for using mirroring imaging services. Mr. Frost does not explain why they were necessary and if so, what electronic devices were seized. Moreover, Consilio is a firm that specializes in e-Discovery, document review, and other legal consulting services. The Court finds AK Futures' use of such services unnecessary in the collection of the money judgment, especially when it was satisfied with a cashier's check.

Accordingly, the Court awards a sum of **$3,790** in third-party costs.

> 3.    Lodestar Analysis related to Contempt Motion

With respect to its contempt motion, AK Futures seeks $181,662.50 in attorneys' fees. (Id. Ex B, Ex. H.) However, the Court finds these costs again unreasonable. The billing records are again riddled with the same issues as those in the post-judgment enforcement matter.

First, the billing records pertaining to the contempt motion indicate excessive and duplicative preparation. For example, the records go back to January 9, 2022. (Id. Ex. B.) However, the actual application for contempt against Smoke Tokes was filed on March 28, 2023—more than a year later. And despite these hours spent on the motion, AK Futures did not meet and confer, resulting in the Court denying the motion on April 20, 2023. (See Dkt. No. 94.) Though the Court explicitly stated that it cannot rule on the motion for attorneys without a renewed motion for contempt, AK Futures again spent another year bringing the same motion. (Id.) Thus, the Court finds it questionable that it dedicated over 200 hours on the contempt motion prior to April 23, 2023 alone. There is nothing inherently suspect about representing a client, who diligently pays its counsel, in numerous matters. But attorneys cannot be expected to be subsidized for their wasteful legal expenses incurred by their failure to prosecute a case effectively.

Second, the records also include preparation for post-judgment attorneys' fees. For example, Mr. Stein wrote he reviewed materials for attorneys' fees on January 28,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:21-cv-01061-JVS-ADS                    Date    May 9, 2025

Title    AK Futures LLC v. Smoke Tokes LLC et al

2023, and "draft[ed] notice of Marshal" on January 24, 2023.  (Frost Decl. Ex. B, H.)  The Court excluded hours spent exclusively or mostly on the attorneys' fees motion.  While the Court is mindful that it is difficult to parse out the attorneys' fees related to the enforcement of the Writ and the contempt motion, block billing makes it nearly impossible for this Court to determine how much time was spent solely on the contempt motion.

After careful review, the Court estimates AK Futures is entitled to $127,045 for attorneys' fees relating to the contempt motions prior to reductions.  The Court calculates a total of 56.2 hours by Mr. Frost, 106 hours by Mr. Stein, and 40.1 hours by Georg Capielo.  However, due to the aforementioned issues observed in the record, the Court reduces the amount by twenty percent (20%), amounting to **$101,636**.

## IV.  CONCLUSION

For the foregoing reasons, the Court makes the following rulings:

- Smoke Tokes is found in contempt of violating the permanent injunction on three separate occasions.

- The Court awards AK Futures compensatory sanctions of $150,000 for violating the injunction, and $101,636 in attorneys' fees associated with the contempt motion.
  - The Court grants AK Futures seven (7) days to brief the issue of third-party costs incurred in investigating and enforcing the permanent injunction in relation to the contempt motion.  The supplemental brief should be filed no later than May 16, 2025.  Smoke Tokes may file a response by May 23, 2025.
  - AK Futures should concurrently file a proposed final judgment.

- AK Futures' motion for Attorneys' Fees is granted and AK Futures is entitled to an award of post-judgment attorneys' fees of $163,111 and $3,790 in third-party costs.

**IT IS SO ORDERED.**